**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARK METZLER, *individually and on behalf of others similarly situated*, | |
| Plaintiff, | |
| v. | Case No. 1:19-cv-01838 |
| VAPOR 4 LIFE HOLDINGS, INC. | JURY TRIAL DEMANDED |
| Defendant. | |

**CLASS ACTION COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

Plaintiff, Mark Metzler, individually and on behalf of others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief as follows:

**NATURE OF ACTION**

1.     This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA").

2.     Defendant Vapor 4 Life Holdings, Inc. ("Defendant" or "Vapor") is a manufacturer and/or distributor of electronic cigarettes and related products.  To promote its services, Defendant engages in unsolicited marketing, harming thousands of consumers in the process.

3.     In particular, Defendant has violated the TCPA by making unsolicited calls to Plaintiff and Class Members using an "automatic telephone dialing system" as described in 47 U.S.C. § 227(b)(1), without Plaintiff's and Class Members' prior express written consent within the meaning of the TCPA.

4.     Plaintiff therefore brings this action for injunctive relief and statutory damages to hold Defendant accountable for its illegal activities in utilizing automatically dialed calls to market

its goods in services without class members' prior express written consent in violation of the TCPA.

## JURISDICTION AND VENUE

5.      This matter in controversy exceeds $5,000,000, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Further, Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

6.      This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

7.      This Court has personal jurisdiction over Defendant because portions of the conduct at issue in this case occurred, among other locations, in this District, and because Defendant's contacts with this District are sufficient to subject it to personal jurisdiction in this District.

8.      Venue is proper because a substantial portion of the events complained of occurred in this District, and because Defendant resides and maintains its principal corporate address in this District.

## PARTIES

9.      Plaintiff Mark Metzler is, and at all times mentioned herein was, an individual citizen of the State of Pennsylvania.

10.      Defendant Vapor is an Illinois corporation with its principal place of business in Northbrook, Illinois.

2

## THE TELEPHONE CONSUMER PROTECTION
## ACT OF 1991 (TCPA), 47 U.S.C. § 227

11.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

12.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

13.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice."  *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

14.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

15.     In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express *written* consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

3

16.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

17.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

18.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

19.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

20.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142

4

(2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

21.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

22.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

23.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc*., 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the ***text message***) (emphasis added).

24.     As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

25.     Thus, under the TCPA, the burden is on the telemarketer – here, Defendant Vapor – to obtain, document, and prove prior express written consent.

## FACTUAL ALLEGATIONS

### *E-Cigarettes Are a Growing Epidemic*

26.     According to the Center for Disease Control ("CDC"), electronic cigarettes ("e-cigarettes") produce an aerosol by heating a liquid that usually contains nicotine—the addictive drug in regular cigarettes, cigars, and other tobacco products—flavorings, and other chemicals that help to make the aerosol. Users inhale this aerosol into their lungs. Bystanders can also breathe in this aerosol when the user exhales into the air.

27.     E-cigarettes are known by many different names. They are sometimes called "e-cigs," "vape pens," "vapes," and/or "electronic nicotine delivery systems (ENDS)."

28.     While sellers of e-cigarettes often market themselves to consumers as a "safe alternative" to cigarettes, the American Heart Association notes there is little scientific evidence of this claim.[1]

29.     In reality, e-cigarettes are often very harmful to consumers because they deliver nicotine, which is highly addictive and may cause negative health effects, including, but not limited to, cancer and/or harming the developing brains of teens.[2]

30.     Notwithstanding these facts, e-cigarette sellers, such as Defendant, continue to market their products to consumers.  What's more, these companies have come under fire recently for aggressively marketing their products to children.[3]

---

[1] https://www.heart.org/en/healthy-living/healthy-lifestyle/quit-smoking-tobacco/is-vaping-safer-than-smoking.
[2] *Id*.
[3] https://www.chicagotribune.com/news/opinion/commentary/ct-perspec-e-cigarettes-fda-teens-epidemic-kids-0926-20180924-story.html

31.     As the American Heart Association notes, in 2014 alone, e-cigarette companies spent more than $125 million on aggressive marketing. In that same year, almost half of US teens ages 12-17 and more than 80 percent of young adults ages 18-21 were exposed to magazine ads for e-cigs.[4]

32.     Indeed, vaping is now the most common form of tobacco use by kids and teens. In 2016, more than 2 million kids — 4.3 percent of middle-schoolers and 11.3 percent of high-schoolers — reported using e-cigarettes in the past month.[5]

33.     As a result, the Food and Drug Administration has described teenage e-cigarette use as an "epidemic," echoing the firsthand observations of teachers, social media watchers and the public health community.[6]

34.     Despite these alarming trends, e-cigarette manufacturers, including Defendant, blatantly engage in unlawful marketing practices in an effort to get their piece of a multi-billion-dollar industry.[7]

### *Defendant Blatantly Violates the TCPA*

35.     Defendant is a major manufacturer and/or distributor of e-cigarettes and related products.

36.     Defendant operates under the trade name "Vapor 4 Life" and directs and controls all aspects of the sale of its well-known products, including the marketing and advertising of said products.

---

[4] https://www.heart.org/en/healthy-living/healthy-lifestyle/quit-smoking-tobacco/is-vaping-safer-than-smoking.
[5] *Id*.
[6] https://www.chicagotribune.com/news/opinion/commentary/ct-perspec-e-cigarettes-fda-teens-epidemic-kids-0926-20180924-story.html.
[7] https://www.prnewswire.com/news-releases/global-e-cigarette-and-t-vapor-market-to-reach-8643-billion-by-2025-reports-bis-research-675808803.html.

37.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

38.     Beginning in or around January 2 of 2019, Plaintiff began receiving numerous autodialed text messages on his cellular telephone ((XXX) XXX-3278) from Defendant (SMS Code 998-88).   The text messages were sent for the purpose of marketing / promoting Defendant's "vaping" products.

39.     All of the text messages sent by Defendant were without Plaintiff's prior express written consent to be sent marketing/promotional text messages by use of an ATDS in violation of the TCPA.

40.     An example of the most recent text messages sent by Defendant is depicted below



41.     The text messages were sent from the short code "998-88".

42.     At no time did Plaintiff provide Defendant with prior express written consent to be sent marketing/promotional text messages to his cellular device.

43.     The text messages were annoying and harassing to Plaintiff, and an invasion of his privacy.  The text messages violated the TCPA because they were made without Plaintiff's prior express written consent.

### Defendant Uses an ATDS to Send the Text Messages at Issue

44.     The impersonal and generic nature of Defendant's text message demonstrates that Defendant utilized an ATDS in transmitting the messages.  *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

45.     The text messages originated from telephone number 998-88, a number which upon information and belief is owned and operated by Defendant.

9

46.     The number used by Defendant (998-88) is known as a "short code," a standard 5-digit code that enables Defendant to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

47.     Short codes work as follows:  Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic.  These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a short code.

48.     Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the text messages at issue in this case.  The systems utilized by Defendant have the capacity to store telephone numbers using a random or sequential generator, and to dial such numbers from a list without human intervention.

49.     Likewise, upon information and belief, Defendant utilized an outbound calling system that automatically dials a list of telephone numbers stored by Defendant to place the telemarketing text messages at issue.

50.     Defendant's outbound dialer is therefore a predictive dialing system, which the courts have held constitutes an ATDS under the TCPA.  *See, e.g.*, *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018).  *See also, e.g.*, *Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333, 2017 WL 2455095, at *1 (M.D.N.C. June 6, 2017) (declining to set aside jury verdict in TCPA case in which the defendant's agent called plaintiffs using a predictive dialer), *awarding treble damages*, 2017 WL 3206324, at *1 (M.D.N.C. July 27, 2017) (potential $61 million judgment), *appeal docketed*, No. 18-1518 (4th Cir. May 8, 2018); *Thomas v. Dun &*

*Bradstreet Credibility Corp.*, Case No. 2:15-cv-03194-BRO-GJS (C.D. Cal.) ($10.5 million cash settlement for a class of small business owners who received telemarketing calls from a predictive dialer); *Mey v. Frontier Comms. Corp.*, No. 3:13-cv-01191 (D. Conn. June 2, 2017) (Dkt. 164) ($11 million settlement for class of consumers called by call vendor's predictive dialer).

51.     By sending the unauthorized the text messages alleged herein, Defendant has caused consumers (including Plaintiff) actual harm and cognizable legal injury.  This includes the aggravation and nuisance and invasions of privacy that resulted from the receipt of such messages, in addition to a loss of value realized for the monies consumers paid to their phone carriers for the receipt of such messages.  Furthermore, the messages interfered with Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendant also caused substantial injury to their cellphones by causing wear and tear on their property, consuming battery life, and in some cases appropriating cellular data or minutes.

### CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated ("the Class").

53.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons who from four years prior to the filing of this action (1) were sent a text message and/or received a phone call by or on behalf of Defendant, (2) using an automatic telephone dialing system, (3) for the purpose of soliciting a purchase of Defendant's goods or services, and (4) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiffs.

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of, the Class. Excluded from the Class are Defendant and any entities in which

11

Defendant has a controlling interest, Defendant's agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family.

54.     Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable.

55.     Plaintiff does not know the exact number of members in the Class, but on information and belief, the number of Class members at minimum is in the thousands.

56.     The members of the class are ascertainable because the Class is defined by reference to objective criteria.

57.     In addition, the members of the Class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and by third parties.

58.     Plaintiff's claims, and the claims of the members of the Class, originate from the same conduct, practice and procedure on the part of Defendant.

59.     Plaintiff's claims are based on the same theories as are the claims of the members of the Class.

60.     Plaintiff suffered the same injuries as the members of the Class.

61.     Plaintiff and all members of the Class have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, depletion of their cellular phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

62.     This Class Action Complaint seeks injunctive relief and money damages.

63.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of claims in a class action will provide

substantial benefit to the parties and the judicial economy of the Court in avoiding a multiplicity of identical suits.

64.     There are well defined, nearly identical, questions of law and fact affecting all Class members. The questions of law and fact involving the Class claims predominate over questions which may affect individual Class members. Those common questions of law and fact include, but are not limited to, the following:

> **(1)** Whether Defendant made non-emergency calls to Plaintiffs' and Class members' cellular telephones using an ATDS;
>
> **(2)** Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;
>
> **(3)** Whether Defendant's conduct was knowing and willful;
>
> **(4)** Whether Defendant is liable for damages, and the amount of such damages; and
>
> **(5)** Whether Defendant should be enjoined from such conduct in the future.

65.     As a person who received a non-emergency telemarketing call and/or text message via an automatic telephone dialing system without providing his prior express consent to Defendant within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also received such phone calls and/or text messages.

66.     Plaintiff will fairly and adequately represent and protect the interests of the Class, and has no interests which are antagonistic to any member of the Class.

67.     Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

68.     A class action is the superior method for the fair and efficient adjudication of this controversy.

69. Class wide relief is essential to compel Defendant to comply with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for the violation of the TCPA are small.

70. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the calls/messages at issue are all automated and the Class members did not provide prior express written consent, as required under the statute, to authorize such calls/messages to their cellular telephones.

71. Defendant has acted on grounds applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

72. Moreover, on information and belief, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## COUNT I

### Violations of the TCPA, 47 U.S.C. § 227(b)

#### (On Behalf of Plaintiff and the Class)

73. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

74. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

75. Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

76. These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiffs and the other members of the putative Class when its calls were made.

77. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

78. Defendant knew that it did not have prior express consent to make these calls and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

79. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiffs and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiffs and the class are also entitled to an injunction against future calls. *Id*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and their counsel as Class Counsel;

a) An award of actual and statutory damages;

15

b)      An order declaring that Defendant's actions, as set out above, violate the TCPA;

c)      A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

d)      An injunction requiring Defendant to cease all unsolicited text messaging activity, and to otherwise protect the interests of the Classes;

e)      An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, recipient's consent to receive calls made with such equipment; and

f)      Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

Dated: March 15, 2019                    Respectfully submitted,

                                         **MARK METZLER**

                                         */s/ Gary M. Klinger*

                                         **KOZONIS & KLINGER, LTD.**
                                         Gary M. Klinger
                                         4849 N. Milwaukee Ave., Ste. 300
                                         Chicago, Illinois 60630
                                         Phone: 312.283.3814
                                         gklinger@kozonislaw.com

                                         **SHAMIS & GENTILE, P.A.**
                                         Andrew J. Shamis, Esq.
                                         Florida Bar No. 101754
                                         ashamis@shamisgentile.com
                                         14 NE 1st Avenue, Suite 1205
                                         Miami, FL 33132
                                         Telephone: 305-479-2299

                                         **EDELSBERG LAW, PA**
                                         Scott Edelsberg, Esq.
                                         Florida Bar No. 0100537
                                         scott@edelsberglaw.com
                                         19495 Biscayne Blvd #607
                                         Aventura, FL 33180
                                         Telephone: 305-975-3320

                                         *Attorneys for Plaintiff and*
                                         *the Proposed Class*